UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL JOHN AMBROSIA,

        Plaintiff,

    -vs-              13-CV-298-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

---

APPEARANCES:  LEWIS L. SCHWARTZ, ESQ., Buffalo, New York, for Plaintiff

        WILLIAM J. HOCHUL, JR., United States Attorney (GAIL Y. MITCHELL, Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated April 23, 2015 (Item 18).

Plaintiff Michael John Ambrosia initiated this action on March 22, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Act, respectively. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (see Items 10, 11). For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

**BACKGROUND**

Plaintiff was born on June 30, 1963 (Tr. 250).[1] He filed applications for SSDI and SSI benefits on April 23, 2010, alleging disability due to right shoulder pain, "manic depression," a poor memory, and an inability to read or write, with an onset date of January 20, 2010 (Tr. 250-55). The applications were denied administratively on July 13, 2010 (Tr. 56-62). Plaintiff requested a hearing, which was held by videoconference on March 21, 2012, before Administrative Law Judge ("ALJ") Scott M. Staller (Tr. 25-49). Plaintiff appeared and testified at the hearing, and was represented by counsel. Plaintiff's girlfriend Carrie Sosie and vocational expert ("VE") Dianne Regan also appeared and testified.

On April 12, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 5-17). Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (identified as right shoulder pain, borderline intellectual functioning, personality disorder, and alcohol and cocaine dependence), while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 10-12). The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including the objective medical evidence and plaintiff's testimony and written statements about his symptoms, and determined that plaintiff had the residual functional capacity ("RFC") to perform work at the

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

"medium"[2] exertional level, with additional exertional and non-exertional limitations (Tr. 12). Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC would be able to perform the physical and mental demands of plaintiff's past relevant work as a laborer, and alternatively, would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and using Rules 204.00 and 203.26 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 15-17).

The ALJ's decision became the final decision of the Commissioner on February 27, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to consider at step three of the sequential evaluation process whether plaintiff's mental impairments met or equaled the criteria for establishing "intellectual disability" under Listing 12.05C; (2) failed to consider plaintiff's depression and anxiety as severe impairments; (3) failed to properly weigh opinion evidence; and (4) failed to properly consider the hearing testimony of lay witness Carrie Sosie. *See* Items 11, 17. The government contends that the

---

[2]"Medium work" is defined in the regulations as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c), 416.967(c).

Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Items 10, 15.

## DISCUSSION

I.  **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.      Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes

before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008

WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III. The ALJ's Disability Determination

In this case, ALJ Staller determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since January 20, 2010, the alleged onset date (Tr. 10). At step two, the ALJ determined that plaintiff's physical and mental impairments are "severe" as that term is defined in the regulations because they cause "more than minimal functional limitation in his ability to perform basic work-related activities" (*id.*).

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment, specifically considering the criteria of Listings 12.02 (Organic Mental

Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders) (Tr. 10-11).[3] Based on plaintiff's hearing testimony, and relying on the reports of consultative examining medical sources Renee Baskin, Ph.D (*see* Tr. 329-38) and Kathleen Kelley, M.D. (Tr. 340-43), the ALJ determined that plaintiff had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and had experienced one or two episodes of decompensation which had been of extended duration (Tr. 59-60). The ALJ also found no evidence to establish the presence of "paragraph C" criteria (*id.*; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(C), 12.08(C).

The ALJ then found that plaintiff had the RFC for medium work, with physical limitations of the right upper extremity regarding more than occasional reaching overhead and lifting more than ten pounds, and several non-exertional limitations including the ability to: understand, remember, and carry out simple instructions, and make judgments on simple work-related decisions; tolerate only occasional decision making, only occasional changes in the work setting, only brief, infrequent and superficial contact with the public, and only occasional contact with co-workers and supervisors; maintain attention and concentration for 2-hour segments over an 8-hour period; and complete a normal work

---

[3]To satisfy this criteria, the claimant must show (among other things) that his or her impairment resulted in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(B), 12.08(B) (Paragraph "B" criteria). Under Listing 12.09, substance abuse disorders involving organic mental disorders and/or personality disorders are evaluated under the criteria of Listings 12.02 and/or 12.08, respectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09.

week without excessive interruption from psychologically or physically based symptoms (Tr. 12). In making this finding, the ALJ considered the objective medical evidence in the record, along with the opinions of the consultative examining sources and plaintiff's hearing testimony regarding the functional limitations caused by the symptoms of his physical and mental impairments (Tr. 12-15). Based upon his consideration of this evidence, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged, but the extent of the limiting effects of both his physical and mental symptoms were "not as severe as alleged" (Tr. 13, 14). With regard to the opinion evidence, the ALJ noted that the record contained no medical opinions from any treating source, and therefore the ALJ attributed "significant weight" to certain aspects of the consultative examiners' opinions–specifically, Dr. Kelley's opinion that repetitive use of the right arm at work would require plaintiff to receive "comfort breaks," and Dr. Baskin's opinion that plaintiff can understand and follow simple directions and perform simple tasks independently (Tr. 14-15).

At step four of the sequential evaluation, the ALJ found that plaintiff could return to his past relevant work as a general laborer (Tr. 15). The ALJ relied on plaintiff's testimony regarding the physical and mental demands of this work, along with the VE's testimony in response to the ALJ's hypothetical questions as to whether an individual with of plaintiff's age with similar education, work experience, RFC, and work-related limitations could perform the exertional requirements of the laborer job, as well as other jobs existing in the national economy, as classified in the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") (Tr. 15). Based on this testimony, the ALJ made the alternative finding at step five that plaintiff was capable of making a successful adjustment

to other work, and that the Grids provided a framework for finding plaintiff "not disabled" within the meaning of the Act at any time during the relevant period (Tr. 15-16).

## IV. Plaintiff's Motion: Listing 12.05

Plaintiff contends that the Commissioner's final determination should be reversed, or the matter should be remanded to the Commissioner, because the ALJ failed to consider whether plaintiff's mental impairments met or equaled the criteria of Listing 12.05 (Intellectual disability).[4] Listed impairments are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995) (quoting *Dixon v. Heckler*, 785 F.2d 1102, 1103 (2d Cir. 1981)). Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." *Id*.; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). As already indicated, the claimant bears the burden at step three to establish that his or her impairments meet or equal the criteria of a Listing. *See Johnson v. Colvin*, 2014 WL 6883606, at *5 (W.D.N.Y. Dec. 4, 2014) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To satisfy the criteria of Listing 12.05, a claimant must (1) demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially

---

[4]Listing 12.05 was amended effective August 1, 2013, substituting the term "Intellectual disability" for the term "Mental retardation." No other substantive change was made to the Listing criteria.

manifested during the developmental period; *i.e.*, … before age 22[,]" and (2) meet the requirements of subsection A, B, C, or D. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. Plaintiff contends that the record contains sufficient evidence to make both showings.

With regard to the first showing, reference is made to the report of a psychological evaluation performed in February 1981 by School Psychologist Milton Anglin, when plaintiff was 17 years old. Wechsler Adult Intelligence Scale ("WAIS") testing at that time yielded a verbal IQ of 69, performance IQ of 98, and full scale IQ of 80 (Tr. 359). Dr. Anglin noted that plaintiff had previously been recommended for placement in an educable mentally retarded ("EMR") program, based on psychological evaluations in 1974 and 1977 indicating "borderline" mental retardation, with verbal ability in the EMR range, and performance ability in the "slow learner" range (*id.*). Upon evaluation, Dr. Anglin noted plaintiff's difficulties in perceptual motor abilities and academic achievement. He was described as a "non-reader" (Tr. 361). Dr. Anglin's overall impression was "learning disability with accompanying emotional features as well as other emotional involvement" and "perceptual motor problems," indicating the need for placement in a learning disabled class setting (*id.*). In the court's view, and in the absence of any indication in Dr. Anglin's narrative (or elsewhere) to question the validity of the February 1981 WAIS IQ scores, this evidence provides a sufficient basis upon which a reasonable adjudicator could find that plaintiff had significantly subaverage general intellectual functioning with deficits in adaptive functioning which initially manifested before age 22.

With regard to the second showing, plaintiff contends that he meets the criteria of subsection C, which requires (1) "valid verbal performance, or full scale IQ of 60 through

70 …," and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. Regarding IQ scores, the regulations provide that for the purposes of Listing 12.05, only the lowest IQ subscore needs to be considered. *See id.*, § 12.00(D)(6)(c) ("[i]n cases where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05"). As indicated, plaintiff's lowest subscore on the February 1981 administration of the WAIS test was a Verbal IQ of 69.

Plaintiff also underwent intelligence testing during his consultative examination with Dr. Baskin on June 25, 2010 (*see* Tr. 329-38). Dr. Baskin administered the Wide Range Achievement Test ("WRAT") III standardized achievement test, which yielded a score of "below 45 in reading/decoding," the grade equivalent of kindergarten (Tr. 336), and the WAIS-IV standardized intelligence test, which yielded a Full Scale IQ of 61, Verbal Comprehension score of 63, Perceptual Reasoning score of 69, Working Memory score of 63, and Processing Speed score of 74 (Tr. 337). Dr. Baskin noted in her narrative that these results placed plaintiff "in the mildly mentally retarded range of intellectual functioning" (*id.*), but may reflect "a slightly lower estimate of the claimant's true cognitive abilities due to lack of effort" (Tr. 336).

The second prong of 12.05C requires a physical or other mental impairment imposing a significant work-related limitation of function. In this regard, ALJ Staller found that plaintiff suffered from additional severe impairments, including right shoulder pain and a personality disorder (Tr. 10). As this court has recognized, "the proper test for evaluating an additional impairment under Listing 12.05(C) is the same test used at step two of the

sequential evaluation to determine whether an impairment is 'severe.' " *Velez v. Astrue*, 2013 WL 321552, at *6 (W.D.N.Y. Jan. 28, 2013) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c); *Baneky v. Apfel*, 997 F. Supp. 543, 546 (S.D.N.Y. 1998) ("This Court holds that the correct standard for determining whether an "additional" impairment imposes a "significant" work-related limitation under section 12.05(C) is the severity test ...")). Thus, the ALJ's step two finding – that plaintiff has both physical and mental impairments that significantly limit his ability to do basic work activities – qualifies to meet the second prong of Listing 12.05C. *See MacMillan v. Astrue*, 2009 WL 8595781, at *6 (N.D.N.Y. Nov. 17, 2009); *Velez*, 2013 WL 321552, at *6 ("Because the ALJ found that Velez has a number of physical limitations that are severe, the second prong of Listing 12.05C is met.").

As noted, in making his step three determination of Listing severity, the ALJ considered the criteria for sections 12.02, 12.08, and 12.09, but not section 12.05, ultimately finding that plaintiff's cognitive limitations were within the "borderline" range and did not preclude his ability to function in a supervised work setting (Tr. 14). According to the government, this finding is supported by substantial evidence, including plaintiff's testimony and work records indicating that he performed unskilled work at substantial gainful activity ("SGA") levels during the years 2000, 2001, 2002, 2006, 2007, 2008, and 2009 (Tr. 30-31, 269, 277). However, as indicated by the discussion above, the court's review of the record reveals evidence of plaintiff's subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22, along with qualifying valid IQ scores and physical or other mental impairment imposing a significant work-related limitation of function, which a reasonable adjudicator could find sufficient to meet the criteria of Listing 12.05C. Indeed, plaintiff's 2010 standardized IQ

test scores were much lower than his 1981 scores, and Dr. Baskin specifically noted that plaintiff's 2010 scores placed him in the mildly mentally retarded range of intellectual functioning (Tr. 337). In light of these perceived inconsistencies, the ALJ should have sought clarification from Dr. Baskin and/or otherwise supplemented the record in order to provide a valid assessment of plaintiff's cognitive function and its effect on his mental ability to do basic work activities. *See, e.g., Sindoni v. Colvin*, 2015 WL 3901955, at *5 (N.D.N.Y. June 25, 2015) (ALJ has affirmative duty to develop the record by seeking additional evidence or clarification when there is a conflict or ambiguity that must be resolved); *Rolon v. Commissioner of Social Sec.*, 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014) (Failure to seek clarification of perceived inconsistencies in medical source's findings about claimant's mental functional limitations was legal error).

Based on this assessment of the record, the court finds that the ALJ's failure to consider whether plaintiff's mental impairments met or equaled the criteria for establishing "intellectual disability" under Listing 12.05C constitutes legal error that disregards highly probative evidence, requiring remand to the Commissioner for further consideration in accordance with the matters discussed herein. On remand, the Commissioner shall consider "[a]ny issues relating to [plaintiff's] claim …," 20 C.F.R. § 404.983, including but not limited to the severity of plaintiff's depression and anxiety, and the weight to be accorded to opinion evidence and lay witness testimony.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 11) is granted, the Commissioner's motion for judgment on the pleadings (Item 10) is denied,

and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the matters discussed above.

The Clerk of the Court is directed to enter judgment in favor of plaintiff, and to close the case.

So ordered.

\s\ John T. Curtin<br>JOHN T. CURTIN<br>United States District Judge

Dated: August 14, 2015
p:\pending\2013\13-298.ssdi.si.aug6.2015